UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BLUE COMPASS RV, LLC F/K/A RV RETAILER, LLC, | § § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:24-CV-1987-B |
| TWIN CITY FIRE INSURANCE COMPANY, | § § § § | |
| Defendant. | § | |

### MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Twin City Fire Insurance Company ("Twin City")'s Motion to Dismiss under Rule 12(b)(6) (Doc. 15). For the reasons set forth below, the Court **GRANTS** Twin City's Motion and **DISMISSES** Plaintiff Blue Compass RV, LLC f/k/a RV Retailer, LLC ("Blue Compass")'s Complaint in its entirety **WITH PREJUDICE**. A Final Judgment will follow.

### I.

### BACKGROUND

This dispute arises out of an insurance policy (the "Policy") that Twin City sold Blue Compass, which was effective from January 2022 to January 2023. Doc. 7, Am. Compl., ¶ 17.

In February 2022, Blue Compass was using SPD Construction ("SPD") as its general contractor to build a new RV sales and service center. *Id.* ¶ 5. SPD sent periodic invoices to Blue Compass, which Blue Compass would pay in its ordinary course by sending money to SPD's funds transfer account. *See id.* ¶¶ 10–11. In February 2022, "Blue Compass received an e-mail purporting to be from Cody McLennan with SPD Construction, informing Blue Compass that SPD

Construction was changing its banking information" for payments. *Id.* ¶ 6. The email contained a signature block and "SPD Construction" logo. *Id.* ¶ 7. The next day, Blue Compass received another email purportedly from SPD sending new payment instructions. *Id.* ¶ 8. Blue Compass exchanged a few more emails with the purported SPD sender and then updated its information for transferring funds to SPD. *Id.* ¶ 9.

But the emails were not from SPD—they were from a fraudster. *Id.* ¶¶ 6–9. In March 2022, Blue Compass paid a routine invoice of $1,251,068.34 using the fraudulent transfer instructions. *Id.* ¶¶ 11–13. Blue Compass notified Twin City as soon as it learned of the fraud. *Id.* ¶ 16.

Blue Compass's Policy with Twin City includes twelve Insuring Agreements, each with specific coverage limits. *Id.* ¶ 18. Relevant to this Motion are:

- Insuring Agreement 2. – Forgery or Alteration Including Credit Cards (the "Forgery Provision"), *id.* ¶¶ 19–21;
- Insuring Agreement 3. – Theft Inside the Premises (the "Theft Provision"), *id.* ¶¶ 22–23;
- Insuring Agreement 5. – Computer and Funds Transfer Fraud (the "Computer Fraud Provision"), *id.* ¶¶ 24–25; and
- Insuring Agreement 9. – Deception Fraud (the "Deception Fraud Provision"), *id.* ¶¶ 26–28.

The coverage limits for the Forgery Provision, the Theft Provision, and the Computer Fraud Provision are each $2,000,000. *Id.* ¶¶ 19, 22, 24. But the coverage limit for the Deception Fraud Provision is only $100,000. *Id.* ¶ 28.

Deception Fraud is excluded from any coverage under the Policy other than as provided by the Deception Fraud Provision. *See id.* ¶ 31. Specifically, the Policy provides:

> This Coverage Part Does Not Apply To And The Insurer Will Not Pay For: . . .
>     (T) Deception Fraud Exclusions

> (1) Loss or damage resulting directly or indirectly from **Deception Fraud. This exclusion shall not apply to the Deception Fraud Insuring Agreement**.
> (2) Loss or damage:
>> (a) resulting from **Theft** by an Employee;
>> (b) resulting from **Forgery** . . .
>> (c) directly related to the **use of any computer to fraudulently cause a transfer of Money** or Securities from inside the Premises or Banking Premises;
>> (d) resulting from **Funds Transfer Fraud**;
>> . . .
>> **This exclusion shall apply only to the Deception Fraud Insuring Agreement**.

Doc. 17, App'x, 28, 30 (emphasis added).[1] According to the (T)(1) exclusion (the "Deception Fraud Exclusion"), Blue Compass's coverage for Deception Fraud is limited to coverage provided by the Deception Fraud Insuring Agreement (the "Deception Fraud Provision"). In other words, if Blue Compass's loss results from Deception Fraud, it can only recover under the Deception Fraud Provision for up to $100,000. *See id.* at 30. And according to the (T)(2) exclusion, a loss caused by forgery, theft, or computer fraud is excluded from coverage under the Deception Fraud Provision. *Id.*

The Policy defines "Deception Fraud" as "the intentional misleading of a person to induce the Insured to part with Money or Securities by someone, other than an identified Employee, pretending to be an Employee, owner of the Insured or . . . (1) A Vendor; (2) A Customer; (3) A Custodian; or (4) A Messenger." Doc. 17, App'x, 24. The Policy defines a "Vendor" as "a business entity that sells goods or services to the Insured." *Id.* at 27.

---

[1] The Court will consider the Policy at the pleading stage because it is incorporated by reference into the Complaint. *See Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (a district court can consider documents that are referred to in a plaintiff's complaint and are central to their claim).

Blue Compass filed a claim with Twin City seeking to recover the payment it sent to the fraudster. Doc. 7, Compl., ¶ 35. Twin City found Blue Compass's claim was covered by the Deception Fraud Provision and paid Blue Compass only $100,000 for its loss. *Id.* ¶¶ 38–39, 60.

Blue Compass argues it is entitled to additional coverage and brings five claims against Twin City. First, it brings a declaratory judgment claim, seeking multiple declarations from the Court. *Id.* ¶¶ 45–48. Second, it sues for breach of contract. *Id.* ¶¶ 49–53. Third, it brings a claim under Chapter 542 of the Texas Insurance Code, the Texas Prompt Payment of Claims Act. *Id.* ¶¶ 54–56. Fourth, it brings a claim under Chapter 541 of the Texas Insurance Code for unfair settlement practices. *Id.* ¶¶ 57–61. Fifth, it brings a common law bad faith claim. *Id.* ¶¶ 62–68. Twin City filed a Motion to Dismiss, seeking to dismiss Blue Compass's Complaint in its entirety. *See* Doc. 15. The Court considers the Motion below.

## II.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) authorizes dismissal of a plaintiff's complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation omitted).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). When well-pleaded facts fail to meet this standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (quotations omitted).

### III.

### ANALYSIS

The Court **GRANTS** Twin City's Motion to Dismiss and **DISMISSES** Blue Compass's Complaint in its entirety **WITH PREJUDICE**. First, the Court dismisses Blue Compass's claim for breach of contract. Second, the Court dismisses Blue Compass's bad faith and Texas Insurance Code claims. Third, the Court dismisses Blue Compass's declaratory judgment claim. Fourth, the Court does not grant leave to amend.

Courts interpret insurance policies under ordinary principles of contract law. *E. Concrete Materials, Inc. v. ACE Am. Ins. Co.*, 948 F.3d 289, 300 (5th Cir. 2020). The Court's "primary concern is to give effect to the intentions of the parties as expressed by the policy language." *Am. Nat'l Gen. Ins. Co. v. Ryan*, 274 F.3d 319, 323 (5th Cir. 2001). In doing so, the Court gives terms used in the policy "their plain, ordinary meaning unless the policy itself shows that the parties intended the terms to have a different, technical meaning." *Id.* However, "[w]hen terms are defined in an insurance policy, those definitions control the interpretation of the policy." *E. Concrete Materials*, 948 F.3d at 300 (quotation omitted). "[A] court should interpret an insurance policy in a way which (1) confers meaning to all its terms; (2) harmonizes and gives effect to all of the provisions; and (3)

avoids rendering parts of the policy inoperative or meaningless." *Great Am. Ins. Co. v. Emps. Mut. Cas. Co.*, 18 F.4th 486, 490 (5th Cir. 2021) (quotations and alterations omitted).

"The insured bears the initial burden of showing that there is coverage, while the insurer bears the burden of proving the applicability of any exclusions in the policy." *John M. O'Quinn, P.C. v. Lexington Ins. Co.*, 906 F.3d 363, 367 (5th Cir. 2018). "Terms in insurance policies that are subject to more than one reasonable construction are interpreted in favor of coverage." *Am. Home Assur. Co. v. Cat Tech L.L.C.*, 660 F.3d 216, 220 (5th Cir. 2011) (quotation and alteration omitted). "An ambiguity does not exist, however, simply because the parties interpret a policy differently. If a contract as written can be given a clear and definite legal meaning, then it is not ambiguous as a matter of law." *Id.* (quotation omitted). "When an exclusion is clear and unambiguous, [the Court] interpret[s] it according to its plain meaning, [giving] no deference to the insured's interpretation." *Id.* (citation omitted).

A.  *Blue Compass's Breach of Contract Claim is Dismissed.*

The Court finds that Blue Compass failed to plausibly allege a breach of contract claim. First, the Court can dismiss the claim based on Twin City's affirmative defense because it appears on the face of the Complaint. Next, Blue Compass's loss falls only within the Deception Fraud Provision. Because Twin City paid Blue Compass the maximum under this Provision, Blue Compass cannot state a claim for breach of contract.

1.  <u>The Court May Dismiss Based on Twin City's Affirmative Defense.</u>

First, the Court can properly consider whether the Deception Fraud Exclusion limits Blue Compass's recovery to $100,000. Blue Compass asserts that Twin City seeks dismissal based on an "*un-pleaded* affirmative defense of policy exclusions." Doc. 24, Resp., 4 (emphasis added). Blue

Compass is correct that a policy exclusion is an affirmative defense. *See Standard Waste Sys. Ltd. v. Mid-Continent Cas. Co.*, 612 F.3d 394, 398 (5th Cir. 2010).[2] But a defendant need not plead it. A court can dismiss a case under Rule 12(b)(6) based on an affirmative defense if the defense "appear[s] on the face of the complaint." *Alexander v. Verizon Wireless Servs., L.L.C.*, 875 F.3d 243, 249 (5th Cir. 2017) (quotation omitted). In its Complaint, Blue Compass provides the text of the Deception Fraud Exclusion, which Twin City argues limits Blue Compass's loss to coverage provided under the Deception Fraud Provision. *See* Doc. 7, Am. Compl., ¶¶ 31, 38–43; Doc. 16, Mot., 12–17. Accordingly, the Exclusion appears on the face of Blue Compass's Complaint, so the Court can dismiss Blue Compass's claims based on Twin City's affirmative defense.

    2.    <u>Blue Compass's Loss Falls Only Within the Deception Fraud Provision.</u>

The Court finds Blue Compass's loss falls only within the Deception Fraud Provision. While an insurer generally pays for an insured's loss that falls within the policy, insurers do not pay for losses that they can show fall within an exclusion. *See Seger v. Yorkshire Ins. Co.*, 503 S.W.3d 388, 400 (Tex. 2016) (noting once an insured establishes its loss is covered, an insurer can avoid liability if it establishes the loss falls within an exclusion). Here, Blue Compass's loss falls squarely within the unambiguous definition of "Deception Fraud." Therefore, under the Deception Fraud Exclusion, Blue Compass's loss is excluded from other Insuring Agreements.

    *i.    Blue Compass suffered a loss from Deception Fraud.*

Blue Compass's loss resulted from Deception Fraud. Under the Policy, Deception Fraud is "the intentional misleading of a person to induce the Insured to part with Money or Securities by

---

[2] The Court applies Texas law to this Motion because the parties apply Texas law in their briefs. *See generally* Doc. 24, Resp. (applying Texas law); *see also* Doc. 16, Mot., 10 (noting "Texas law and Florida law do not differ on the issues relevant to this Motion," and proceeding to apply Texas law).

someone, other than an identified Employee, pretending to be an Employee, owner of the Insured or . . . (1) A Vendor; (2) A Customer; (3) A Custodian; or (4) A Messenger." Doc. 17, App'x, 24. The Policy defines a "vendor" as "a business entity that sells goods or services to the Insured." *Id.* at 27. The Court finds that the Policy's definitions of Deception Fraud and vendor are unambiguous. The loss here falls squarely within Deception Fraud under the Policy because it resulted from Blue Compass being deceived into sending money to someone it thought was SPD Construction, which is a vendor.

First, Blue Compass's loss resulted from Blue Compass being deceived into sending money to someone it thought was SPD Construction. Blue Compass alleges that it "received an e-mail purporting to be from Cody McLennan with SPD Construction, informing Blue Compass that SPD Construction was changing its banking information for . . . payments." Doc. 7, Am. Compl., ¶ 6. The fraudster later provided "fraudulent funds transfer instructions for an account not owned by SPD Construction." *Id.* ¶ 8. Blue Compass then updated the payment information for SPD and paid a genuine invoice for $1,251,068.34 using the fraudulent payment instructions. *Id.* ¶¶ 9–13. Thus, the fraudster intentionally lied about its identity, which misled Blue Compass's employee. *Id.* ¶¶ 6–9. Using this deception, the fraudster induced the employee to change SPD's account information. *Id.* ¶¶ 8–13. The fraudster thus induced the employee to send money to the fraudster's account, rather than to SPD's account. *Id.*; *see Inducement*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("The act or process of enticing or persuading another person to take a certain course of action."). As a result, Blue Compass sent money to someone pretending to be an employee of SPD Construction. *See* Doc. 7, Am. Compl., ¶¶ 6–13.

Second, SPD Construction is a "vendor." The Policy defines a vendor as "a business entity that sells goods or services to the Insured." Doc. 17, App'x, 27. The Policy does not define goods or services, so the Court gives the terms their "plain and ordinary meaning [because] the instrument [does not] indicate[] the parties intended a different meaning." *See Dynegy Midstream Servs., Ltd. P'ship v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex. 2009).

SPD was Blue Compass's vendor because it sold "services" to Blue Compass under the plain and ordinary meaning of "service." A "service" is "[l]abor performed in the interest or under the direction of others; [specifically], the performance of some useful act or series of acts for the benefit of another, [usually] for a fee." *Service*, BLACK'S LAW DICTIONARY (12th ed. 2024); *see Markel Ins. Co. v. Muzyka*, 293 S.W.3d 380, 386 (Tex. App.–Fort Worth 2009, no pet.) (citing *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 751 n.30 (Tex. 2006) ("In determining the ordinary and generally accepted meaning of an undefined term in an unambiguous insurance policy provision, Texas courts may consult dictionaries.")). SPD, as a general contractor, "was in the midst of building a new RV sales and service center" for Blue Compass for a fee. Doc. 7, Compl., ¶¶ 5, 10. It was thus performing labor in Blue Compass's interest, so it sold a "service" under the plain meaning of the word. Accordingly, based on the plain meaning of "service," Blue Compass sent money to a vendor. *See Dynegy Midstream*, 294 S.W.3d at 168. It lost $1,251,068.34 due to Deception Fraud.

Blue Compass argues the Policy is ambiguous with respect to whether SPD—a general contractor—was a vendor. Doc. 24, Resp., 3. The Court finds the Policy is not ambiguous because Blue Compass's interpretation is unreasonable. *See Tesoro Ref. & Mktg. Co., L.L.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 833 F.3d 470, 474 (5th Cir. 2016) (noting for a contract to be ambiguous, it must be "susceptible to two or more *reasonable* interpretations" (quoting *American Mfrs. Mut. Ins.*

*Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003) (emphasis added)). Blue Compass argues SPD was not a vendor because it sold neither goods nor services. Doc. 24, Resp., 7–10. It argues SPD did not sell services because a service is "work whose value is in the intangible product is creates," like "legal services, architectural or engineering services," and the like. *Id.* at 9. Meanwhile SPD's "labor produces a tangible product." *Id.* at 10. The Policy does not define "services" or otherwise indicate such a narrow definition of "services." And it neither excludes general contractors from being vendors nor separately defines general contractors. Therefore, Blue Compass's interpretation is unreasonable because it unduly narrows the Policy language.

Blue Compass argues its loss does not fall within Deception Fraud for two other reasons. Each one fails. First, Blue Compass argues throughout its Response that a Rule 12(b)(6) dismissal is inappropriate because Twin City cannot show "the pleadings on their face reveal beyond doubt that the plaintiffs can prove no set of facts that would entitle them to relief." *See, e.g.*, Doc. 24, Resp., 4 (citing *Garret v. Commonwealth Mortg. Corp.*, 938 F.2d 591, 594 (5th Cir. 1991)). This misstates the law. Plaintiffs in federal court must plead "enough facts to state a claim to relief that is plausible on its face." *See Twombly*, 550 U.S. at 570. Therefore, to survive a motion to dismiss, a plaintiff must allege "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.[3] Blue Compass would ask the Court to deny Twin City's Motion if there is a "sheer possibility" Blue Compass can recover. *See id.* The Court will not do so because this misconstrues the law.

Second, Blue Compass argues that Twin City bears the burden to show an exclusion applies and it cannot show Blue Compass was induced to part with money. Doc. 24, Resp., 5–7. Blue Compass argues that "induce" is a specific term, "which means to entice or persuade a person to a

---

[3] Blue Compass cites cases that were decided before *Twombly*, 550 U.S. 544. *See* Doc. 24, Resp., 4.

'certain course of action.'" *Id.* at 6 (quoting *Inducement*, BLACK'S LAW DICTIONARY (10th ed. 2014)). The fraudster only tricked Blue Compass into changing its payment instructions for SPD, Blue Compass argues, rather than into sending the fraudster some amount of money. *Id.* And the money Blue Compass sent the fraudster was for a routine invoice, which Blue Compass would have paid regardless of the fraudster's actions. *Id.* Thus, Blue Compass argues the fraudster only enticed Blue Compass to change its wiring instructions, rather than to part with money. *Id.* Because Deception Fraud requires the insured to be induced to part with money, Blue Compass argues its loss did not result from Deception Fraud. *Id.*

This argument fails. While Twin City indeed bears the burden of showing its exclusion applies, if the "exclusion is clear and unambiguous, [the Court] interpret[s] it according to its plain meaning and give[s] no deference to the insured's interpretation." *Cat Tech.*, 660 F.3d at 220. "If only one party's construction is reasonable, the policy is unambiguous and [the Court] will adopt that party's construction." *RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015).

Here, Blue Compass's interpretation is unreasonable. The reason the fraudster shared false payment information was to induce Blue Compass to send money to an account it thought belonged to SPD. Thus, the fraudster *did* induce Blue Compass to take a particular course of action in which it parted with money: Blue Compass changed SPD's payment information, which Blue Compass used to send a payment to the fraudster during its ordinary course of business. Therefore, Blue Compass's loss unambiguously resulted from Deception Fraud.

        *ii.*     *Blue Compass's loss is excluded from other Insuring Agreements.*

Because Blue Compass's loss resulted from Deception Fraud, the loss is covered only by the Deception Fraud Provision and not by any of the other Insuring Agreements. If Blue Compass

suffers a loss from Deception Fraud, then it can only recover for that loss under the Deception Fraud Provision. *See* Doc. 17, App'x, 30–31. Therefore, any losses Blue Compass suffers from Deception Fraud are limited to $100,000 in coverage. *Id.* at 8. This is because the Policy provides:

> This Coverage Part Does Not Apply To And The Insurer Will Not Pay For: . . .
>     (T) Deception Fraud Exclusions
>         (1) Loss or damage resulting directly or indirectly from Deception Fraud. This exclusion shall not apply to the Deception Fraud Insuring Agreement.

*Id.* at 28, 30. The Policy only covers loss from Deception Fraud under the Deception Fraud Provision, which provides up to $100,000 in coverage. If Blue Compass suffers a loss from Deception Fraud, then, it can collect no more than $100,000 from Twin City. *See id.* at 8, 30.

But if Blue Compass suffers a loss from something that is not Deception Fraud, it can recover more. For example, if it suffers a loss from forgery, loss of money from theft inside the premises, or computer and funds transfer fraud, Blue Compass can collect up to $2,000,000 in coverage. *See id.* at 8, 21–22. But the (T)(1) exclusion bars coverage for Deception Fraud under all Insuring Agreements except the Deception Fraud Provision. *See* Doc. 17, App'x, 30–31. Thus, because (T)(1) applies to all three provisions, even if they would otherwise provide coverage, (T)(1) bars coverage here. *Id.*

Additionally, finding that Blue Compass's loss exclusively falls under the Deception Fraud Provision promotes cross-jurisdictional uniformity. *See Apache Corp. v. Great Am. Ins. Co.*, 662 F. App'x 252, 258 (5th Cir. 2016) (interpreting an insurance policy to achieve consistency with other jurisdictions interpreting the same provision). "Courts usually strive for uniformity in construing insurance provisions, especially where . . . the contract provisions at issue are identical across the jurisdictions." *Nat'l Union Fire Ins. Co. of Pittsburgh v. CBI Indus., Inc.*, 907 S.W.2d 517, 522 (Tex.

1995). "Thus, when no Texas court has interpreted a particular provision, [the Court] look[s] to the courts of other states for guidance" as to how Texas courts may interpret the provision. *Lynch Props., Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 626 (5th Cir. 1998). The Court is aware of one other case interpreting an insurance policy that contains computer fraud and deception fraud provisions that are identical to the ones at issue here. *See Children's Apparel Network Ltd. v. Twin City Fire Ins. Co.*, No. 18 CIV. 10322 (GBD), 2019 WL 3162199 (S.D.N.Y. June 26, 2019).

In *Children's Apparel*, the co-owners of a company received emails from someone pretending to be the company's lawyer. *Id.* at *1. The purported lawyer asked the company to transfer money to a bank account in Hong Kong. *Id.* Not knowing the email was fraudulent, the company transferred the money. *Id.* The insurer argued the loss was covered only under its deception fraud coverage, but not the policy's computer and funds transfer fraud coverage. *Id.* The company sued, claiming the insurer breached the insurance policy. *Id.* The court dismissed the company's claim "because the email fraud constituted 'deception fraud' under the unambiguous terms of the Policy." *Id.* at *2. The court reasoned that the (T)(1) exclusion, which was identical to (T)(1) here, "disclaims full recovery of losses resulting from deception fraud, except as provided under" an identical Deception Fraud Provision. *Id.* "Even if the Policy would otherwise generally cover computer fraud under [the computer fraud provision]," the court explained, "Exclusion (T)(1) expressly precludes such coverage here." *Id.* at *3. The Court finds this reasoning persuasive.

Blue Compass argues that the court in *Children's Apparel* "acknowledge[d] that if the facts of that case had fit within [the computer fraud provision], 'total coverage would be provided.'" Doc. 24, Resp., 3 (quoting *Children's Apparel*, 2019 WL 3162199, at *5). Because the facts of this case could fit within the Computer Fraud Provision, Blue Compass argues that, unlike the policy in

*Children's Apparel*, the Policy here is "at the very least[] ambiguous as to which grant of coverage . . . applies." *Id.* But part of the reason why the *Children's Apparel* court found the loss did not fit within the computer fraud provision was *because* it fit within the deception fraud provision instead. *See* 2019 WL 3162199, at *5. The court analyzed two scenarios that would not be deception fraud because "they do not involve 'deception' of the insured or its agents." *Id.* The court found those scenarios—which involved the use of computers—would fall within the computer fraud provision because they were not deception fraud. *Id.* Thus, the court found that "total coverage would be provided" if the facts fit within the computer fraud provision *and not* the deception fraud provision. *See id.* Contrary to Blue Compass's contention, the court did not find that a loss resulting from deception fraud could also fall within the computer fraud provision.

Blue Compass further argues that the (T)(1) and (T)(2) exclusions "render[] the Policy ambiguous when more than one insuring agreement applies." Doc. 24, Resp., 11. It argues such an ambiguity exists here because the loss it suffered could fall within the Forgery Provision, the Theft Provision, or the Computer Fraud Provision. Doc. 7, Compl., ¶¶ 19–25. But because of (T)(1), a loss cannot be covered under the other Insuring Agreements if it results from Deception Fraud. *See* Doc. 17, App'x, 30–31. Thus, even if those three provisions would otherwise provide coverage, (T)(1) bars coverage here because it applies to all three provisions. *Id.* Therefore, the fact that the loss could be defined under the Policy as both Deception Fraud *and* one of these other three types of losses does not make the Policy ambiguous. Instead, because the (T)(1) exclusion is clear, the Court finds that Blue Compass is attempting to create an ambiguity where there is none. *See Cat Tech*, 660 F.3d at 220 ("If a contract as written can be given a clear and definite legal meaning, then it is not ambiguous as a matter of law." (quotation omitted)).

Blue Compass further argues that interpreting the Deception Fraud loss as mutually exclusive from other covered losses "would render the Deception Fraud Exclusions meaningless." Doc. 24, Resp., 12. The Court is not persuaded. The Policy provides distinct categories of coverage and includes the Deception Fraud Exclusion to limit recovery for losses from Deception Fraud to coverage under the Deception Fraud Provision. The fact that the Policy provides distinct coverages and then adds an Exclusion to make one type of loss mutually exclusive from other coverages does not render the Exclusion meaningless. Therefore, this argument fails.

Finally, Blue Compass argues (T)(2) is superfluous with (T)(1), which renders (T)(2) meaningless and makes both exclusions ambiguous. Doc. 24, Resp., 13. Blue Compass argues that (T)(1) alone would have "exclude[d] Deception Fraud from all insuring agreements except the Deception Fraud [Provision]." *Id.* at 15. And because (T)(1) excludes Deception Fraud from all other coverages, and (T)(2) excludes all other coverages from Deception Fraud, Blue Compass argues the Policy is ambiguous when a loss could fall under Deception Fraud or another coverage. *Id.* at 16. But because the (T)(1) and (T)(2) exclusions apply to different Insuring Agreements, they cannot be superfluous. *See* Doc. 17, App'x, 30–31.

In sum, Blue Compass's loss falls only within the Deception Fraud Provision. Blue Compass's loss falls squarely within the definition of Deception Fraud. And its loss in excess of $100,000 is excluded from other Insuring Agreements under the unambiguous terms of the Policy. Accordingly, Blue Compass's breach of contract claim is dismissed.

B.    *Blue Compass's Bad Faith and Texas Insurance Code Claims are Dismissed.*

The Court next dismisses Blue Compass's claims for common law bad faith and violations of Chapters 541 and 542 of the Texas Insurance Code. *See* Doc. 7, Am. Compl., ¶¶ 54–68. First,

Blue Compass's claim for bad faith is dismissed. Blue Compass alleges Twin Cities acted in bad faith and violated the implied covenant of good faith and fair dealing. *See id.* ¶¶ 62–68. "As a general rule there can be no claim for bad faith when an insurer has promptly denied a claim that is in fact not covered." *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995) (collecting cases); *see Martin Res. Mgmt. Corp. v. Fed. Ins. Co.*, No. 20-40571, 2021 WL 4269565, at *6 (5th Cir. Sept. 20, 2021) ("A claim for breach of the implied covenant of good faith and fair dealing cannot exist absent a breach of contract."). Because Blue Compass "has no right to receive [additional] benefits under [this] contract," it cannot allege a common law bad faith claim. *See id.* at *6.

Second, Blue Compass's claim for statutory penalties for failing to promptly pay under Chapter 542 of the Texas Insurance Code is dismissed. Doc. 7, Am. Compl., ¶¶ 54–56. "[A]n insured who sues an insurer for statutory violations can only recover damages 'caused by' those violations." *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 491 (Tex. 2018). Thus, a finding that there is no coverage under the policy negates any extra-contractual claims that are "predicated on the insurance policy and the [injury] being covered under the insurance policy." *See id.* (quotation and alteration omitted). Accordingly, because Twin City paid Blue Compass $100,000—the maximum coverage under the Deception Fraud Provision—Blue Compass cannot maintain a Chapter 542 claim for failure to promptly pay. Doc. 7, Am. Compl., ¶ 60.

Third, Blue Compass's claim for actual damages for unfair settlement practices under Chapter 541 of the Texas Insurance Code is dismissed. *See id.* ¶ 60. Even if an "insurer violates a statutory provision, that violation—at least generally—cannot cause damages in the form of policy benefits that the insured has no right to receive under the policy." *Menchaca*, 545 S.W.3d at 492–93. Therefore, "an insured cannot recover policy benefits as actual damages for an insurer's statutory

violation if the insured has no right to those benefits under the policy." *Id.* at 495. Here, the Court found Blue Compass did not have a right to additional benefits under the Policy once Twin City paid its claim under the Deception Fraud Provision. Because Blue Compass does not have rights to the policy benefits it seeks, it cannot recover actual damages. *See id.*

C.  *Blue Compass's Declaratory Judgment Claim is Dismissed.*

Lastly, the Court dismisses Blue Compass's declaratory judgment claim. Doc. 7, Am. Compl., ¶ 48. "When a plaintiff's substantive claims have been dismissed, 'it is appropriate also to dismiss any declaratory-judgment request.'" *Vasquez v. United States*, No. 3:24-CV-0629-S, 2025 WL 847882, at *7 (N.D. Tex. Mar. 18, 2025) (Scholer, J.) (quoting *Stallings v. CitiMortgage, Inc.*, 611 F. App'x 215, 218 (5th Cir. 2015)). Because the Court dismissed each of Blue Compass's substantive claims, it also dismisses Blue Compass's declaratory judgment claims. *See id.*

D.  *The Court Does Not Grant Leave to Amend.*

The Court **DISMISSES** all claims **WITH PREJUDICE**. A plaintiff's failure to plead a claim should not automatically result in dismissal with prejudice. *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000). However, a court may dismiss a claim with prejudice if the pleading defect is incurable or if the plaintiff has had other opportunities to amend his complaint. *Id.* Here, the pleading defects are incurable because the Policies preclude Blue Compass from collecting the damages it seeks to recover. *See Martin Res. Mgmt.*, 2021 WL 4269565, at *1 (affirming dismissal with prejudice when the insured did not establish "coverage under the terms of the policy").

## IV.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Twin City's Motion to Dismiss under Rule 12(b)(6) (Doc. 15) and **DISMISSES** each of Blue Compass's claims **WITH PREJUDICE**. A Final Judgment will follow.

**SO ORDERED.**

**SIGNED: July 10, 2025.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE